# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARQUETTE TRANSPORTATION COMPANY GULF-INLAND L.L.C. | * * * | CIVIL ACTION |
| | * | NO. 2:13-cv-06216 |
| VERSUS | * | c/w 2:14-cv-02071 |
| | * | |
| M/V CHEMBULK WESTPORT, ET AL | * | SECTION "A" (4) |
| | * | |
| APPLIES TO  ALL CASES | * | JUDGE ZAINEY |
| | * | |
| | * | MAG ROBY |
| *    *    *    *    *    *    *    *    * | | |

## CHEMBULK MANAGEMENT LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Chembulk Management LLC ("Chembulk Management") respectfully seeks a summary judgment dismissing it from this consolidated lawsuit on grounds that it was neither the owner nor operator of the M/T CHEMBULK WESTPORT on 22 October 2013 and had no control over, or responsibility for, the condition of the CHEMBULK WESTPORT or the actions of its crew at the time of the alleged incident in suit on 22 October 2013.  Summary judgment dismissing Chembulk Management as a party to this litigation is, therefore, appropriate and warranted.

## Relevant Facts

On the morning of 22 October 2013, the M/T CHEMBULK WESTPORT, a vessel owned and operated by claimant/defendant/third-party plaintiff Mi-Das Line S.A., was

downbound in the Mississippi River transiting through the New Orleans harbor. At the time, Marquette's tug, KRISTIN ALEXIS, was assisting with a heavy lift operation at the Louisiana Ave. Wharf in New Orleans. At approximately 9:30 that morning, as the M/T CHEMBULK WESTPORT passed the vicinity of the Louisiana Ave. Wharf, a crewboat owned by third-party defendant Weeks Marine, Inc., the M/V CAPTAIN PETE, passed between the M/T CHEMBULK WESTPORT and the tug KRISTIN ALEXIS.

Marquette alleges that as the M/T CHEMBULK WESTPORT passed the Louisiana Ave. Wharf, its wake washed over the back deck of the KRISTIN ALEXIS and caused the KRISTIN ALEXIS to capsize and sink. The entire crew of the KRISTIN ALEXIS escaped before the tug sank and was rescued from the river.  The evidence will show that the M/T CHEMBULK WESTPORT passed no closer than 1000 feet from the KRISTIN ALEXIS, and that the vessel was not making an unreasonably large or hazardous wake. The evidence will further show that the watertight doors on the KRISTIN ALEXIS were all open, and the tug had minimal aft freeboard.

Defendant Chembulk Management acted as the commercial operator for the long-term sub-time charterer of the vessel, Chembulk Trading II, LLC.[1]  Chembulk Trading II had sub-time chartered the M/T CHEMBULK WESTPORT from Chembulk Trading LLC pursuant to a SHELLTIME 4 time charter party dated 25 January 2007.[2]   Chembulk

---

[1]  See Declaration of Michael McCormick, attached hereto as Exhibit 1 ("McCormick Dec."), at ¶ 3, and Exhibit "A" thereto.
[2]  McCormick Dec., ¶ 5, and Exhibit "C" thereto.

Trading had time chartered the M/T CHEMBULK WESTPORT from Mi-Das Line under

a SHELLTIME 4 Time Charter Party dated December 2004.[3]

　　　As the commercial operator of the M/T CHEMBULK WESTPORT's sub-time

charterer, Chembulk Management had no responsibility for or involvement in the hiring,

training or supervision of the vessel personnel, the manning of the vessel or the operation

or navigation of the vessel on 22 October 2013 (or at any time).  Neither Chembulk

Management nor the time charterers had any personnel aboard the M/T CHEMBULK

WESTPORT at the relevant time.  Therefore, Chembulk Management could not be liable

even if fault could be assessed to the M/T CHEMBULK WESTPORT, which is denied.

## Pertinent Procedural Background

　　　On 22 October 2013, Marquette filed a Verified Complaint in this Honorable

Court against four (4) defendants: (1) the M/T CHEMBULK WESTPORT, *in rem*; (2)

Mi-Das Line; (3) Chembulk Management; and (4) MTM Ship Management Pte. Ltd.,[4] to

recover damages allegedly resulting from the capsizing of the Tug KRISTIN ALEXIS

earlier that day.  [Rec. Doc. 1 in C.A. No. 13-6216].  Marquette alleged that each *in*

*personam* defendant was "the owner and/or operator of the M/V CHEMBULK

WESTPORT." [*Id*., ¶¶ 4-6].

　　　On 23 December 2013, Mi-Das Line filed a Verified Statement of Right or

Interest, acknowledging its ownership interest of the CHEMBULK WESTPORT and its

---

[3] / McCormick Dec., ¶ 4, and Exhibit "B" thereto.
[4] / MTM Ship Management Pte. has since been dismissed as a defendant in this case. [Rec. Doc. 20 in C.A. No. 13-6216].

intent to defend the vessel *in rem*. [Rec. Doc. 10 in C.A. No. 13-6216].  Subsequent to

that filing, Mi-Das Line filed its Answer to Marquette's Verified Complaint and also

asserted a third-party demand against Weeks Marine, Inc. ("Weeks Marine") and the

M/V CAPTAIN PETE, *in rem*. [Rec. Doc. 11 in C.A. No. 13-6216].  In its Answer, Mi-

Das Line again acknowledged its ownership of the CHEMBULK WESTPORT and

identified MTM as the technical operator of the vessel. [*Id.*, ¶¶ 4, 6].  Significantly, Mi-

Das Line expressly denied that Chembulk Management was the owner and/or operator of

the vessel. [Rec. Doc. 11, ¶5].

Chembulk Management made its formal appearance in this matter on 23 June

2014, answering Marquette's Verified Complaint.  Chembulk Management denied that it

was the owner and/or operator of the CHEMBULK WESTPORT and did not assert any

third-party claims against any party. [Rec. Doc. 23 in C.A. No. 13-6216].

On 10 September 2014, Marquette filed its Limitation Action, C.A. No. 14-2071,

seeking exoneration from or limitation of liability for any loss, damage or injury arising

out of the capsizing and sinking of the M/V KRISTIN ALEXIS on 22 October 2013.

[Rec. Doc. 1 in C.A. No. 14-2071].[5]  In its Limitation Action, Marquette revealed that the

KRISTIN ALEXIS's relief captain on the day of the incident, Adam Verdin, had asserted

a claim for injuries purportedly resulting from the capsizing of the KRISTIN ALEXIS,

and that Verdin would also assert claims against the defendants in C.A. No. 13-6216,

including Chembulk Management. Verdin did, in fact, file a claim in the Limitation

---

[5]  On 12 November 2014, the Court consolidated Marquette's original suit, No. 13-6216, with the Limitation Action. [Rec. Doc. 36].

Action on 15 December 2014, in which he asserted claims against, among others,

Chembulk Management.  [Rec. Doc. 40].

Trial in this matter was originally set for 16 March 2015 but was continued and

has now been reset for 2 November 2015.

## Summary Judgment Standard

A motion for summary judgment may be filed by any party asserting that there is

no genuine issue of material fact and that the movant is entitled to prevail as a matter of

law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying

those portions of the pleadings and discovery on file, together with any affidavits, which

it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts

to the non-movant to show that summary judgment should not be granted. *Celotex Corp.,*

477 U.S. at 324-25.  The non-movant may not rest upon mere allegations or denials in its

pleadings but must set forth specific facts showing the existence of a genuine issue for

trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## Law and Argument

At all pertinent times, Chembulk Management did not own, operate or charter the

CHEMBULK WESTPORT.[6]  At the time of the alleged incident, the CHEMBULK

WESTPORT was time chartered from the owner to Chembulk Trading.  The vessel was

then sub-time chartered from Chembulk Trading LLC to Chembulk Trading II.

---

[6] /        McCormick Dec., ¶11.

Chembulk Management was the commercial operator of Chembulk Trading II pursuant to a management agreement.[7]  Neither Chembulk Management nor the time charterers were involved in the manning, operation or navigation of the CHEMBULK WESTPORT on or about 22 October 2013 (or at any time), and neither had any personnel aboard the CHEMBULK WESTPORT at that time.[8]

The Fifth Circuit has repeatedly held that a time charterer is not responsible for the operation of the chartered vessel or the negligence of its crew.  *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213 (5th Cir.1993); *Kerr-McGee Corp. v. Ma-Ju Marine Services, Inc.*, 830 F.2d 1332, 1340 (5th Cir. 1987).  As the court explained in *Forrester*:

> A time charter only entitles the charterer to the use of the vessel for a specified time. The vessel owner retains primary possession and control. Although a time charterer does direct the destinations of the vessel, he does not control the details of vessel operation required to reach those destinations.

11 F.3d at 1215 (emphasis added).  "A time charterer is not liable for negligence of the vessel's crew or unseaworthiness of the vessel, but it may be liable for its own negligence." *Id*. "'[T]raditional time-charterer duties' are limited to the vessel's commercial activities, such as designating the cargo and the routes and destinations...". *Id*. at 1216.

Thus, as the time charterer of the M/T CHEMBULK WESTPORT, Chembulk Trading II had no responsibility for the vessel or its crew on 22 October 2013.  By extension, as the time charterer's commercial operator, Chembulk Management also had

---

[7] /      *Id*. ¶3.
[8] /      *Id*. ¶¶8, 9, 12 and 13.

no responsibility for the vessel or its crew on that day (or any day).  Moreover, as Mi-Das Line has repeatedly acknowledged, Mi-Das Line was the owner and operator of the CHEMBULK WESTPORT on 22 October 2013 and was responsible for the manning and navigation of that vessel.[9]

The Fifth Circuit has further explained, "[o]nly one who is owner or owner *pro hac vice*, operating the vessel, is liable for the acts of the master and crew in its navigation and management." *Atl. Coast Line R. Co. v. Agwilines, Inc*., 195 F.2d 459, 462 (5th Cir. 1952).  As described in Mr. McCormick's Declaration and in the pleadings filed by Mi-Das Line, Chembulk Management is not an owner or owner *pro hac vice* of the CHEMBULK WESTPORT.  Mr. McCormick's Declaration serves as competent summary judgment evidence relative to Chembulk Management's role, or lack thereof, in the CHEMBULK WESTPORT's manning, navigation and operation.  *See* Fed. R. Civ. P. 56; *Celotex Corp*., *supra*.  As such, Chembulk Management cannot be liable for the acts of the CHEMBULK WESTPORT's master and crew or the vessel's navigation.

In *Davis v. O'Brien's Response Mgmt., LLC*, C.A. No. 13-4853, 2014 WL 2882952, *1 (E.D. La. June 25, 2014), plaintiffs filed suit under the general maritime law and the Longshore and Harbor Workers' Compensation Act, alleging that the defendant was the "owner, owner pro hac vice, operator and/or charterer" of the vessel plaintiffs

---

[9] /     Mi-Das Line denies that it or the M/T CHEMBULK WESTPORT, *in rem*, did anything wrong or have any legal liability for the incident made the basis of this lawsuit.  But Mi-Das Line acknowledges that the allegations of vessel fault made by the parties are not properly asserted against Chembulk Management.

were when it collided with a boat beacon.  The defendant sought summary judgment, arguing

> that it was "neither the owner, owner pro hac vice, operator or charterer of the [SAGE JUANITA], was not the employer of either the plaintiffs or the crew of that vessel, and was in no way responsible for the operation or navigation of that vessel when it collided with a beacon thereby allegedly causing injury to plaintiffs.

*Id*.  The Court observed that "to prevail on their claims against [defendants], Plaintiffs must establish that [defendant] was the owner or owner pro hac vice of the SAGE JUANITA or otherwise employed the vessel's crew." *Id*. at *2 (citing *Workman v. City of New York*, 179 U.S. 552, 573 (1900) ("A recovery can be had *in personam* ... for a maritime tort when the relation existing between the owner and the master and crew of the vessel, at the time of the negligent collision, was that of master and servant."), and *Eskine v. United Barge Co*., 484 F.2d 1194, 1196 (5th Cir.1973) (owner *pro hac vice* of vessel may be held liable for damages resulting from unseaworthiness)).

The SAGE JUANITA Court granted summary judgment on the basis that there was no opposition to this position, and because affidavits and the pleadings established that, at the time of the accident, the defendant did not own the vessel, did not operate the vessel, did not have the vessel under charter, did not have direct control of the vessel or crew, and did not employ the vessel's crew.   The same is true in the present case.  Here, at the time of the incident in suit, Chembulk Management did not own the M/T CHEMBULK WESTPORT; did not operate the vessel; did not have the vessel under

charter; did not have control of the vessel or the crew; and did not employ the vessel's crew.[10]  As such, Chembulk Management cannot be held liable under general maritime law for any alleged errors in navigating the M/T CHEMBULK WESTPORT through the New Orleans Harbor on 22 October 2013.

### Conclusion

The owner and operator of the CHEMBULK WESTPORT has been identified, and it was not Chembulk Management.  Chembulk Management was merely the commercial operating company of the vessel's sub-time charterer and, as such, was not responsible for the vessel's manning, navigation and operation.  As such, under the general maritime law, Chembulk Management owed no duties to Marquette, Verdin or any other parties with respect to the operation or navigation of the M/T CHEMBULK WESTPORT.  Summary judgment should be granted as a matter of law, dismissing all claims against defendant Chembulk Management LLC at plaintiff's cost.

---

[10] /        McCormick Dec., ¶¶11, 12 and 13.

Respectfully submitted,

MURPHY, ROGERS, SLOSS,
 GAMBEL & TOMPKINS

 */s/ Peter B. Sloss*
Peter B. Sloss, T.A.  (#17142)
psloss@mrsnola.com
Robert H. Murphy (#9850)
rmurphy@mrsnola.com
Timothy D. DePaula (#31699)
tdepaula@mrsnola.com
701 Poydras Street
400 One Shell Square
New Orleans, LA   70139
Telephone:  (504) 523-0400
Facsimile:  (504) 523-5574
*Attorneys for Chembulk Management, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that 14 April 2015, a copy of the foregoing pleading was sent to all counsel of record, either by operation of the Court's CM/ECF system, by hand, by e-mail, by telefax or by placing same in the United States mail, properly addressed, and first class postage prepaid.

 */s/  Peter B. Sloss*

300/4672