UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, L.L.C.**<br><br>versus<br><br>**M/V CHEMBULK WESTPORT,** *et al.*<br><br>**APPLIES TO ALL CASES** | CIVIL ACTION<br><br>NO. 2:13-cv-06216<br>*consolidated with 2:14-cv-02071*<br><br>SECTION: "A" (4)<br><br>JUDGE ZAINEY<br><br>MAGISTRATE JUDGE ROBY |

**MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY DEFENDANT AND CLAIMANT WEEKS MARINE, INC.'S MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

**PROCEDURAL BACKGROUND**

This litigation commenced on October 22, 2013, with Plaintiff Marquette Transportation Company Gulf-Inland, L.L.C. (Marquette) filing its *Verified Complaint* against several defendants, most importantly Defendant Mi-Das Line, S.A. (Mi-Das Line), alleging that the M/T CHEMBULK WESTPORT created an excessive wake/swell on October 22, 2013, which caused the M/V KRISTIN ALEXIS, a vessel owned and operated by Marquette, to capsize. *Court Record, Doc. No. 1.* Marquette did not sue Weeks Marine, Inc. (Weeks). Mi-Das Line duly answered Marquette's *Verified Complaint*, and made *Third Party Demand and 14(c) Tender* against Weeks and the M/V CAPTAIN PETE, a crew boat owned and operated by Weeks, alleging that the M/V CAPTAIN PETE passed between the M/T CHEMBULK WESTPORT and the M/V KRISTIN ALEXIS at a high rate of speed, and if any wave wash or wake affected the M/V KRISTIN ALEXIS, it emanated from the M/V CAPTAIN PETE. *Court Record, Doc.*

1

*No. 11.* Weeks duly answered Mi-Das Line's *Third Party Demand and 14(c) Tender* on January 27, 2014, denying all pertinent allegations. *Court Record, Doc. No. 16.*

On learning of the allegations of personal injuries suffered by Adam Verdin, a crew member aboard the M/V KRISTIN ALEXIS at the time of the capsizing, Marquette filed its *Verified Complaint for Exoneration from or Limitation of Liability* on September 10, 2014. *Court Record, Doc. No. 1, Civil Action No. 2:14-cv-02071*. Civil Action No. 2:14-cv-02071 was consolidated with the instant litigation by *Order Consolidating Cases* dated November 12, 2014. *Court Record, Doc. No. 36.*

Claimants Adam and Sandra Verdin (Verdins) filed their *Answer and Claim* to Marquette's limitation action on December 12, 2014, alleging damages caused by Marquette, Mi-Das Line, and Weeks. *Court Record, Doc. No. 40.* Mi-Das Line filed its *Claim and Answer* on December 15, 2014. *Court Record, Doc. No. 42.* Weeks filed its *Claim and Answer* on December 15, 2014. *Court Record, Doc. No. 45.*

On January 12, 2015, Marquette answered the Verdins' *Answer and Claim*, and included a Rule 14(c) Tender against Mi-Das Line and Weeks. *Court Record, Doc. No. 55.* Weeks duly answered Marquette's Rule 14(c) Tender on January 15, 2015 (*Court Record, Doc. No. 58*), and the Verdins' *Answer and Claim* on May 4, 2015 (*Court Record, Doc. No. 70*), denying all pertinent allegations. Mi-Das Line duly answered Marquette's Rule 14(c) Tender on April 28, 2015 (*Court Record, Doc. No. 68*), and the Verdins' *Answer and Claim* on April 28, 2015 (*Court Record, Doc. No. 70*), denying all pertinent allegations.

Thus, at present, the allegation of fault against Weeks by all other parties is that, on October 22, 2013, the M/V CAPTAIN PETE passed at an excessive rate of speed

between the M/V CHEMBULK WESTPORT and the M/V KRISTIN ALEXIS, creating an excessive wake that either caused or contributed to the capsizing of the M/V KRISTIN ALEXIS.  The admissible evidence proves that the opposite is true.  Not only is there no evidence that the M/V CAPTAIN PETE created any sort of wake or swell, the admissible evidence proves that the M/V CAPTAIN PETE reduced its speed while passing the M/V KRISTIN ALEXIS, to the point where the M/V CAPTAIN PETE did not create any wake or swell.

## FACTUAL BACKGROUND

Captain Peter Thibodaux boarded the M/V KRISTIN ALEXIS on October 15, 2013.  *See deposition of Peter Joseph Thibodaux at p. 21:21-22, attached as Exhibit 1; Master's Daily Log for October 15, 2013, attached as Exhibit 2.*  Captain Thibodaux worked the 6:00 a.m. to noon and 6:00 p.m. to midnight shifts on the M/V KRISTIN ALEXIS.  *Ex. 1 at p. 49:9-11.*

The M/V KRISTIN ALEXIS was involved with a heavy lift operation on the date of the capsizing.  *Ex. 1 at p. 23:4-8.*  Previous to the date of the accident, Captain Thibodaux had been involved in 10-15 heavy lift operations, doing exactly the same type of work that he was doing on the morning the M/V KRISTIN ALEXIS capsized.  *Ex. 1 pp. 25:23 – 26:13.*  Captain Thibodaux had worked heavy lift operations specifically at the Louisiana Avenue wharf at least two or three times before the morning the M/V KRISTIN ALEXIS capsized.  *Ex. 1 at p. 26:17-22.*

On October 21, 2013, the M/V KRISTIN ALEXIS went to Morgan City, picked up the barge to be used in the heavy lift operation, and went to the Seventh Avenue dock, right behind the ship that was docked at the Louisiana Avenue wharf, arriving at 1915

hours on October 21, 2013.  *Ex. 1 at p. 168:6-22.*  The heavy lift operation started at approximately 7:00 or 7:30 a.m. on October 22, 2013.  *Ex. 1 at pp. 54:23 – 55:3.*  Captain Thibodaux's mission was to keep the barge steady against the ship by pushing the barge into the ship, with the stern of the M/V KRISTIN ALEXIS facing the middle of the Mississippi River.  *Ex. 1 at pp. 57:9 – 58:5.*

Captain Thibodaux recalls seeing the M/V CAPTAIN PETE pass the morning of October 22, 2013, and the M/V CAPTAIN PETE had slowed down, its wake was very, very minimal.  *Ex. 1 at pp. 179:23 – 180:8.*  The M/V CAPTAIN PETE always slowed down for the M/V KRISTIN ALEXIS.  *Ex. 1 at p. 258:22-25.*

Captain Jones passed the M/V KRISTIN ALEXIS and the heavy lift operation four times prior to the passage at issue, slowing down each time, and never swamped the M/V KRISTIN ALEXIS.  *See deposition of Captain Jeffrey E. Jones at pp. 79:3 – 81:7, attached as Exhibit 3.*  Captain Jones slowed down every time he passed the heavy lift operation, pulling the vessel back to idle speed.  *Ex. 3 at 51:16 – 52:4.*  Dropping down to idle speed kills the wake of the M/V CAPTAIN PETE.  *Ex. 3 at 54:3-7, 69:4-9.*

Several crew boats passed by the M/V KRISTIN ALEXIS during the morning of October 22, 2013, and the M/V KRISTIN ALEXIS would rock a little bit with the wave motion, but nothing would come over the bulkhead.  *Ex. 1 at pp. 178:25 – 179:8.*  Captain Thibodaux recognized the rocking as "Just normal slow bells coming by, boats moving at a slower bell."  *Ex. 1 at p. 210:4-15.*  The rocking that caused the capsizing was much bigger, so much so that it startled Captain Thibodaux when it hit the M/V KRISTIN ALEXIS.  *Ex. 1 at p. 210:16-19.*  The rocking that caused the capsizing was

4

nothing like the rocking caused by fleet service vessels that had passed the M/V KRISTIN ALEXIS earlier that morning.  *Ex. 1 at p. 210:20-22.*

When Captain Thibodaux felt the wake that caused the M/V KRISTIN ALEXIS to capsize, he realized that the M/T CHEMBULK WESTPORT must have been going faster than what Captain Thibodaux expected, and figured it was the M/T CHEMBULK WESTPORT's waves; Captain Thibodaux looked downriver and saw the M/T CHEMBULK WESTPORT, "and the only wave it could have been was his [referring to the M/T CHEMBULK WESTPORT]."  *Ex. 1 at p. 211:15-25.*  The reason the M/V KRISTIN ALEXIS capsized was because of the wake from the M/T CHEMBULK WESTPORT.  *Ex. 1 at p. 188:15-20.*

## LAW AND ARGUMENT

### I.      LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law."  *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991), *quoting* Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *Id.*  To defeat a defendant's motion for summary judgment, there must be evidence on which the jury could reasonably find for the plaintiff.  *Id.*  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.  *Id.*

If the moving party meets the initial burden of establishing that there is no genuine issue, the burdens shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The Supreme Court has instructed that the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  *Id.*  Summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant.  *Id.*

## II.   ELEMENTS OF A MARITIME TORT

The analysis of a maritime tort is guided by general principles of negligence law. *In re Signal International, LLC*, 579 F.3d 478, (5th Cir. 2009).  To establish maritime negligence, a plaintiff must "demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury."  *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000), *quoting In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).

A moving vessel owes a duty of reasonable care to appreciate the reasonable effect of its wake and to take reasonable precautions to avoid creating unusual swells that may injure others.  *Turner v. Pleasant*, No. Civ. A. 01-3572, 2004 WL 169801 at *4,

(E.D. La. August 27, 2004); *Gregg v. Weeks Marine, Inc.*, No. Civ. A. 99-1586, 2000 WL 798493 at *4 (E.D. La. June 21, 2000); see *Maxwell v. Hapag-Lloyd Akt Hamburg*, 862 F.2d 767, 769 (9th Cir. 1988).

### III. THE EVIDENCE PROVES THAT THE M/V CAPTAIN PETE SLOWED DOWN AND CREATED NO WAKE EVERY TIME IT PASSED THE M/V KRISTIN ALEXIS

Captain Jones testified that he slowed down the M/V CAPTAIN PETE to idle speed every time he passed the M/V KRISTIN ALEXIS on October 22, 2013, because he saw and recognized the heavy lift operation being conducted at the Louisiana Avenue wharf. At idle speed, the M/V CAPTAIN PETE does not create any sort of wake or swell. Captain Thibodaux confirmed that the M/V CAPTAIN PETE slowed down when it passed the M/V KRISTIN ALEXIS.

This evidence establishes that the M/V CAPTAIN PETE took reasonable precautions to avoid creating an unusual wake or swells that may cause injury to others. There is no evidence that contradicts Captain Jones' testimony that he slowed down every time he passed the M/V KRISTIN ALEXIS on October 22, 2013.

Additionally, there is no evidence that suggests, much less establishes, that the M/V CAPTAIN PETE created any wake while traveling between the M/V KRISTIN ALEXIS and the M/T CHEMBULK WESTPORT on October 22, 2013. There is not a single witness who can provide testimony or an affidavit that states the M/V CAPTAIN PETE created any sort of wake while traveling between the M/V KRISTIN ALEXIS and the M/T CHEMBULK WESTPORT on October 22, 2013. Mi-Das Line brought Weeks into this litigation based on nothing other than the M/V CAPTAIN PETE's presence in the area at the time of the capsizing.

No party to this litigation can come forth with any admissible evidence that the M/V CAPTAIN PETE created any sort of wake or swell that caused or contributed to the capsizing of the M/V KRISTIN ALEXIS on October 22, 2013. In the absence of any such evidence, Weeks should not be forced to endure the cost and expense of the lengthy process of this litigation. There is no evidence on which a reasonable juror could find Weeks liable for the capsizing of the M/V KRISTIN ALEXIS.

This litigation commenced more than one year and seven months ago. The M/T CHEMBULK WESTPORT was served with the warrant of arrest by the U.S. Marshal's Service at 6:30 p.m. on October 22, 2013. *Court Record, Doc. No. 9.* Mi-Das Line has been on notice of this lawsuit from the date of the capsizing. This is more than adequate time for admissible evidence of fault on the part of Weeks to be discovered, by reason of the operation of the M/V CAPTAIN PETE. No such evidence exists.

Accordingly, there is no basis for this Court delaying or denying Weeks' *Motion for Summary Judgment* based on the assertion that additional discovery needs to be conducted. For any party to have alleged Weeks bears any fault for the capsizing of the M/V KRISTIN ALEXIS, there had to have existed evidentiary support for any factual contentions, or, if specifically so identified, there will likely be evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(3). No such evidentiary support exists, and judgment as a matter of law in favor of Weeks is warranted and appropriate.

## CONCLUSION

Weeks Marine, Inc. respectfully requests that this Honorable Court grant its *Motion for Summary Judgment*, and dismiss all parties' claims against Weeks Marine, Inc., with prejudice.

Respectfully submitted on May 30, 2015.

        WAITS, EMMETT, POPP & TEICH, L.L.C.

        s/Matthew F. Popp
        MATTHEW F. POPP  (24608)  T.A.
        RANDOLPH J. WAITS  (13157)
        JOHN F. EMMETT  (1861)
        JORDAN N. TEICH  (32254)
        MARK A. HILL  (33891)
        1515 Poydras Street, Suite 1950
        New Orleans, Louisiana  70112
        Telephone:   504-581-1301
        Facsimile:    504-585-1796
        E-mail:         mpopp@wep-law.com

## CERTIFICATE OF SERVICE

I hereby certify that to the best of my knowledge all counsel of record consent to and participate in receiving electronic notification from the CM/ECF system, and that the Clerk of the Court for the Eastern District of Louisiana, using the CM/ECF system, will electronically send notification of the filing of this pleading to all counsel of record.

        s/Matthew F. Popp