UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARQUETTE TRANSPORTATION COMPANY GULF-ISLAND, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO:  13-6216 c/w 13-2071** |
| **M/V CHEMBULK WESTPORT** | **SECTION: "A" (4)** |

**ORDER**

Before the Court is a **Motion to Quash Pursuant to F.R.CP. Rule 45 (R. Doc. 184)**, filed by Plaintiff, Marquette Transportation Company ("Marquette"), seeking an Order from the Court to quash a subpoena to produce documents served upon its expert psychiatrist, Dr. James Anderson. The motion is opposed. *See* R. Doc. 196. The motion was heard by oral argument on February 3, 2016.

**I.    Background**

This action arises out of the capsizing of Marquette's vessel, the M/V KRISTEN ALEXIS. R. Doc. 1, at 3. Marquette alleges that on or about October 22, 2013, the KRISTEN ALEXIS was moored in the New Orleans harbor when Mi-Das' vessel, the M/V CHEMBULK WESTPORT was operating at high speeds in the harbor causing the KRISTEN ALEXIS to flood and capsize. Id. at 2-3.

Marquette filed this action on October 22, 2013, alleging that the damages it sustained from the capsizing of the KRISTEN ALEXIS are estimated at $1,200,000. In Mi-Das' answer to the complaint, it asserted a third party action against Weeks Marine and its vessel the M/V CAPTAIN PETE. R. Doc. 11. Mi-Das alleges that it is not responsible for the capsizing of the KRISTEN ALEXIS, but rather, Weeks Marine is responsible. *Id.* at 5-6. Mi-Das alleges that the CAPTAIN PETE was operating in close proximity to the KRISTEN ALEXIS immediately before it was capsized. Id. Mi-Das seeks indemnity from Weeks Marine in the event that it is held liable to

Marquette, and in the alternative, alleges that the CAPTAIN PETE was a superseding cause and is also liable. *Id*. at 7.

On December 12, 2014, Adam Verdi and Sanda Verdin (collectively referred to as "Verdin") filed a claim for damages against Marquette, Chembulk Management, LLC and Week Marine, Inc. R. Doc. 40, p. 7. Verdin alleges that on October 22, 2014, he was in the course and scope of his employment as a member of the crew of the KRISTIN ALEXIS. *Id.* at 8. Captain Verdin alleges that when the accident occurred he was in his sleeping quarters when the vessel's alarm sounded. *Id.* at 11. Verdin alleges that the vessel sunk within a minute and that he nearly drowned. *Id.* at 12. From this experience, Verdin alleges that he suffered severe, disabling mental and physical injuries because of the near death experience. Verdin states that he has undergone a number of surgeries including as an anterior cervical discectomy with fusion at C4-5, a right shoulder scope, a distal clavicle resection, and arthroscopic biceps tenodesis, and arthroscopic rotator cuff repair. R. Doc. 196-1, p. 2.

In the instant motion, Marquette seeks to quash a subpoena to produce documents served upon Dr. Anderson, Marquette's expert psychiatrist, by Verdin. Marquette argue that the subpoena, which seeks Dr. Anderson's medical records and reports for the past seven years for various topics, is unduly burdensome because it would take between 110 to 150 hours to answer the subpoena.[1]

---

[1] In full the subpoena states: (1) Please produce a copy of each independent psychiatric evaluation written report prepared by you at the request of any defense counsel in the last seven years. Each report should be properly redacted to protect the identity of the person evaluated; (2) Please produce a copy of each independent psychiatric evaluation written report prepared by you at the request of any plaintiff's counsel in the last seven years. Each report should be properly redacted to protect the identity of the person evaluated; (3) Please produce a copy of each independent psychiatric evaluation written report prepared by you pursuant to an order from a state or federal court ifl the last seven years. Each report should be properly redacted to protect the identity of the person evaluated; (4) Please state your total earnings for the last seven years and for each year please state your total earnings derived from conducting independent psychiatric evaluations for any defense counsel or insurer, and your total earnings derived from conducting independent psychiatric evaluations for any plaintiff's counsel; (5) Please provide copies of any complaints filed against you by any patient that you provided psychiatric services to in the last seven years; (6) Please provide any medical records in your possession where you indicated that you determined a private patient was malingering, or embellishing the severity of their psychological symptoms and/or the severity of their emotional disorder and/or psychiatric disability. Each such record should be properly redacted to protect the identity of the

2

Vertin argues that Marquette does not have standing to quash the subpoena to produce documents served upon Dr. Anderson. R. Doc.196-1, p. 1. Vertin also argues, *arguendo*, that if Marquette does have standing to challenge the subpoena then it suggests a number of limitations to modify the number of records sought. *Id.* at 2.

## II.     Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." See Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Further, it is well established that "control of discovery is committed to the sound discretion of the trial court. . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court

---

private patient; and (7) Please provide a copy of your itemized bill for services rendered by you in anyway related to your evaluation of Captain Adam N. Verdin, Jr. and your proposed testimony in this matter. R. Doc. 184-2, p. 8.

must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* at 45(c)(1). A motion for a subpoena must be quashed or modified where, inter alia, the subpoena "(i) fails to allow a reasonable time to comply . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." *Id.* at 45(c)(3)(A). A court may, in lieu of the above, "order appearance or production under specified conditions if the serving party (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." *Id.* at 45(c)(3)(C).

### III.    Analysis

Marquette argues that the subpoena served upon Dr. Anderson that requires voluminous records and financial reports from the past seven years is unduly burdensome because it will take Dr. Anderson between 110 and 115 hours to respond to the subpoena. R. Doc. 184-2, p. 8. Marquette states that Dr. Anderson personally will have to review each of his patient's files to determine if it is applicable to the subpoena.

In opposition, Vertin states that Marquette requested and he agreed to submit to a medical examination with Dr. Anderson, who opined that Verdin was "malingering," "not truthful," and "feigning or embellishing psychological symptoms for the purpose of secondary financial gain." R. Doc. 196-1, p. 2. Vertin first argues that Marquette lacks standing to object to the subpoena because it was directed to and served upon Dr. Anderson; however, Marquette and not Dr. Anderson is seeking to quash the subpoena. Vertin contends that for Marquette to have standing it

must alleged a personal privacy right or privilege in the documents sought. R. Doc. 196-1, p. 4. Vertin contends that Marquette makes no such argument. *Id.*

Vertin further contends that its subpoena requests are not irrelevant or unduly burdensome because they are similar to requests made in *Dejan v. Nabors Drilling USA*, which is a case from the United States District Court for the Western District of Louisiana. *Dejan v. Nabors Drilling USA*, 2011 WL 6157490 (W.D. La. June 8, 2011). Vertin then proposes a number of modification to the subpoena in the event that the Court holds that Marquette has standing to object to the subpoena. R. Doc. 196-1, p. 6. Vertin states that he agrees to voluntary limit numbers 1 and 2 to the last five years, rather than the seven years initially requested. *Id.* at 7. Vertin further agrees to limit numbers 1 and 2 to only independent psychological reports prepared at the request of defense or plaintiff's counsel. *Id.* Further, Vertin agrees to remove numbers 3 and 6, and states that number 5 is now moot. *Id.* at 8. Regarding number 4, Vertin agrees to limit it to the last five years. Regarding number 8, Vertin proposes to limit the request so that Dr. Anderson is only required to provide a listing of materials by title, location of where those documents may be found, and copies that are available to him electronically. *Id.* at 9.

Subpoenas are governed by Rule 45 of the Federal Rules of Civil Procedure. Ordinarily, "a motion to quash or modify a subpoena under Rule 45(c)(3) may be made by the person to whom the subpoena is directed because that person has standing to attack the subpoena." *Ass'n of Am. Physicians & Surgeons*, 2008 WL 2944671 at *1; *citing Shepard v. Castle*, 20 F.R.D. 184 (W.D.Miss. 1957). *Hoover v. Florida Hydro, Inc.*, 2008 WL 4467661 at *3, citing 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (2d ed. 1995). Therefore, the person from whom the documents or things are requested should generally file a motion to quash or a motion for protective order. However, "a party, although not in possession or control of the requested materials and not the person to whom a subpoena is directed, does have such

5

standing if it has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it." *Id.* (citing *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)). Thus, if the discovery requests seek information that may have been sent by or for the party, the party has a right to challenge the discovery. *Hoover v. Florida Hydro, Inc.*, 2008 WL 4467661, at *3.

As an initial matter, during oral argument, the Court rejected Verdin's argument that Marquette lacked standing to quash the subpoena. The Court reasoned that Marquette has standing to oppose the subpoena because it is representing the interest of Dr. Anderson, who is its expert that examined Verdin. Further, Dr. Anderson is not a party to the action and will incur atypical expenses responding to the subpoena based on his practice as a physician. Accordingly, Marquette and Dr. Anderson are connected sufficiently to permit Marquette to advance Dr. Anderson's position on the matter.

During oral argument, Plaintiff's counsel reiterated that the subpoena is overly burdensome because it requires Dr. Anderson to search all of his patient's records for the past seven years. Counsel stated that Dr. Anderson estimated that it would take between 110 and 150 hours to comply with the subpoena and that Dr. Anderson must personally review the files because it requires a medical determination to decide which are responsive to the subpoena.

Counsel for Verdin stated that in advance of oral argument, it offered to limit the subpoena. Counsel for Verdin agreed to withdraw Nos. 3, 5, and 6 and agreed to limit Nos. 1 and 2 to five years instead of seven, and offered to limit the requests to only civil litigation. Further, Counsel offered to limit the request files in which Dr. Anderson determined that the patient was lying or malingering. Counsel stated that the limitation would result in Dr. Anderson reviewing between fifteen and twenty-two files. Counsel stated that his client is willing to pay for the time that Dr. Anderson will incur reviewing the file, but questioned why an office assistant cannot review the files.

After listening to the position of each side, the Court ordered that Verdin should further narrow Nos. 1 and 2 to three years as opposed to five. The Court also agreed with Verdin's limitation to exclude Nos. 3, 5, and 6. Moreover, the Court disagreed with Plaintiff's assertion that Dr. Anderson must personally review the files. The Court reasoned that an office assistant can review written reports created by Dr. Anderson in the last three years for the term "malingering." The Court held that an hourly rate of $40 is a reasonable amount for Vertin to pay for the office assistant's time to review the files. The Court ordered that the Dr. Anderson's staff member shall review the written reports and Dr. Anderson shall respond to the subpoena no later than **fourteen** days from the signing of this Order.

Counsel for Plaintiff also disputed No. 8 which asks for a copy of any reference materials relied upon by Dr. Anderson when he rendered his psychological opinions of Verdin. The Court exanimated the request and questioned whether Dr. Anderson, who the parties agree is an experienced psychologist, must base his opinion upon published literature or whether his medical conclusion can be based upon his medical expertise from his years of experience as a physician. During oral argument, Counsel for Verdin amended his request to ask Dr. Anderson to provide a copy of any journal article or book chapter which he authored or co-authored to which the Plaintiff did not object.

Regarding No. 4, which seeks Dr. Anderson's total earnings and earning derived from IMEs, counsel for Verdin stated that the information can be easily calculated because the information is attached to 1099 tax return forms provided to Dr. Anderson from previous litigations in which he was hired to conduct an IME. During oral argument, Counsel for Verdin agreed to limit the topic to only earnings derived from IMEs. In line with the other request, the Court also limited the request to the last three years. Accordingly, Plaintiff's motion to quash the subpoena is denied, subject to the above limitations.

### IV.  Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion to Quash Pursuant to FRCP Rule 45 (R. Doc. 184)** is **DENIED** as follows.

**IT IS DENIED AS MOOT** as to Nos. 3, 5, and 6 as Verdin agreed to withdraw those requests.

**IT IS DENIED** as to Nos.1, 2, 4, and 8.

**IT IS FURTHER ORDERED** that Nos. 1 and 2 shall be limited to civil matters in the last three years in which Dr. Anderson determined that the patient was malingering. The files shall be reviewed by a staff member from Dr. Anderson's office at an hourly rate of $40 to paid by Verdin. Dr. Anderson's staff member shall review the file and Dr. Anderson shall respond to the subpoena no later than **fourteen days (14)** from the signing of this Order.

**IT IS FURTHER ORDERED** that No. 4 shall be limited to earnings derived from independent medical examinations in the last three years.

**IT IS FURTHER ORDERED** that No. 8 shall be limited to journal articles or book chapters that Dr. Anderson authored or co-authored.

New Orleans, Louisiana, this 18th day of February 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**